IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

TERESA BERNARD                                                    PLAINTIFF

vs.                              NO. 4:07CV00681BSM

CITY OF BRYANT, ARKANSAS                                          DEFENDANT

## <u>ORDER</u>

Plaintiff brings this action alleging that the City of Bryant violated her rights under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12111 *et seq*, and the Arkansas Civil Rights Act, (ACRA), Ark. Code Ann. § 16-123-107.  Defendant has filed a motion for summary judgment. Doc. No. 24.   Plaintiff has not responded.   For the reasons set forth below, the motion is granted.

## I.  FACTUAL BACKGROUND

In February, 2004, plaintiff was hired as an animal control officer for the City of Bryant, Arkansas.[1] The essential functions of an animal control officer include performing general cleaning of the office, restrooms, and other areas of the facility; performing minor maintenance of the facility and equipment; operating a city vehicle in the course of daily activities; selecting animals to be euthanized and performing euthanasia; feeding and watering animals according to schedule; cleaning kennels and cages; performing outside

---

[1]Plaintiff has not responded defendant's statement of undisputed material facts. Therefore, the facts as set forth above, taken from defendant's statement of undisputed material facts, are deemed admitted.  *See* Local Rule 56.1(c) (all material facts set forth in the movant's statement of material facts not in dispute shall be deemed admitted unless controverted by a statement filed by the non-moving party).

maintenance such as mowing grass, trimming shrubs, and general cleaning; and responding to after hours and weekend emergency calls as needed.

Plaintiff initially injured her back on April 29, 2004, while attempting to capture a large, loose dog. She suffered a herniated disc of her lower back. On June 28, 2004, Dr. Zachary Mason performed a lumbar discectomy on plaintiff. Plaintiff returned to work with no restrictions on August 24, 2004, but could only lift loads of less than 25 pounds.

On September 17, 2005, plaintiff suffered another injury to her back while attempting to lift and hold a dog on a table to perform a euthanasia. Following the injury, plaintiff was unable to lift anything or perform her job duties. Defendant did not have a light duty policy; however, plaintiff returned to work a few days after the September 17th injury and was allowed to perform more limited job duties involving paperwork, computer work, assisting with the feeding and administration of medications to animals, and answering the telephone.

From around November, 2005 until August, 2006, plaintiff saw Dr. Qureshi for pain management and physical therapy. She continued working, but was not able to perform all job duties, and limited her duties to performing paperwork

On August 7, 2006, Dr. Qureshi referred plaintiff to Dr. Mason for surgery. Plaintiff had a large L5-S1 recurrent disc herniation with nerve root compromise and Dr. Mason recommended another lumbar laminectomy and discectomy. Because of the planned surgery, plaintiff, on August 9, requested FMLA leave due to a serious health condition that prevented her from performing essential job functions. The FMLA leave period began on October 6,

2006 and continued to November 4, 2006.  On October 6, 2006, Dr. Mason performed the back surgery.

On November 1, 2006, Dr. Mason performed a post-operative examination and concluded that plaintiff could not yet return to work.  She was released from Dr. Mason's care into the care of Dr. Qureshi for pain management.

On November 2, 2006, plaintiff went to the Human Resources Director, Shayne King, to request another four weeks of FMLA leave.  On November 2, 2006, at 3:15 p.m., Mayor Paul Halley received a telephone call from King informing him of an argument plaintiff had with King.  King reported that she had told plaintiff that a new Animal Control Director, Dale Ruth, was hired and that plaintiff would be assisting in the training of the new director upon her return to work.  According to King, plaintiff became very angry regarding the new employee selection and an argument ensued between plaintiff and King with plaintiff stating that she believed Christi Allen was a better choice for the position and that the new director selection was an unfair decision.  King told plaintiff that the department needed a smooth transition and that if plaintiff did not want to participate, she should seek other job alternatives.  Plaintiff replied, "Don't you threaten me.  This is not over."  Plaintiff continued to speak loudly and angrily, and King requested that plaintiff leave.

Halley reviewed statements by other employees in the surrounding officers near the location where King and plaintiff had the argument.  The other employees reported that they heard loud voices, and one heard plaintiff very loudly state, "What you're doing is wrong,"

and thereafter heard the door slam.  Upon reviewing the facts, Halley told King that the type of behavior plaintiff exhibited could not and would not be tolerated.  He therefore decided to terminate plaintiff.

On November 3, 2006, plaintiff filed a personal grievance in the Mayor's office against King regarding the verbal dispute and previous work-related incidents.  She also requested the employment application of Dale Ruth under the Freedom of Information Act.  After dropping filing her grievance, plaintiff returned home. That same day, Halley called plaintiff to return to the Mayor's office to meet with him.  Upon her return, Halley asked plaintiff to sign one of two letters placed in front of her regarding her employment status.  One letter stated that she was terminated and the other stated that she resigned.  Plaintiff asked why she was being terminated and Halley stated that it was due to the verbal dispute that occurred with King. Plaintiff refused to sign either letter.  Halley informed plaintiff that she was terminated.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Nelson v. Corr. Med. Servs.*, 533 F.3d 958, 961 (8th Cir. 2008) (citing Fed. R. Civ. P. 56; *Brown v. Fortner*, 518 F.3d 552, 558(8th Cir. 2008)).

The moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving

party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). "The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (citations and internal quotation omitted).

"Moreover, 'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.' [Plaintiff as the non-movant] must demonstrate a genuine issue of material fact, that is a dispute that might 'affect the outcome of the suit under the governing law,' so that 'a reasonable jury could return a verdict for the nonmoving party." *Bloom v. Metro Heart Group of St. Louis*, *Inc.*, 440 F.3d 1025, 1028-29 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1985)).

In considering a motion for summary judgment, the court views the evidence and draws all reasonable inference in the light most favorable to the nonmoving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The plain language of Rule 56 mandates the entry of summary judgment against a non-moving party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential

to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

### III.  DISCUSSION

Defendant is entitled to summary judgment because plaintiff cannot establish that defendant discriminated against her on the basis of a disability.  In particular, plaintiff cannot establish that she is a qualified individual within the meaning of the ADA.

The ADA prohibits an employer from discriminating against an otherwise qualified employee with a disability because of that disability.  42 U.S.C. § 12112.  To establish a prima facie case of discrimination under the ADA, plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) qualified, with or without reasonable accommodation, to perform the essential functions of the job at issue; and (3) has suffered an adverse employment decision because of her disability.  *Heaser v. Toro Co.*, 247 F.3d 826, 830 (8th Cir. 2001).  To be a "qualified individual" within the meaning of the ADA, plaintiff "must possess the requisite skill, education, experience, and training for her position; and be able to perform the essential job functions, with or without reasonable accommodation."  *Id.*  "[A] person who cannot perform any of the functions of a job, with or without reasonable accommodation, cannot, as a matter of law, be considered 'otherwise qualified' under the ADA."  *Peyton v. Fred's Stores of Arkansas, Inc.*, 561 F.3d 900, 903 (8th Cir. 2009).

Defendant does not appear to dispute that plaintiff was disabled because of her illness and treatment.  Its contention, however, is that plaintiff was not qualified to perform the

essential functions of her job.  Plaintiff admitted even though she wanted to work, that she could not return to work after the surgery and requested additional leave time. Although she was going to request an additional four weeks, neither she nor her physician could state when she would be able to return to work. "[R]egular attendance at work is an essential function of employment. While allowing a medical leave of absence might, in some circumstances, be a reasonable accommodation, an employer is not required by the ADA to provide an unlimited absentee policy." *Brannon v. Luco Mop. Co.*, 521 F.3d 843, 849 (8th Cir. 2008) (internal quotations and citations omitted).  Furthermore, plaintiff has not demonstrated that additional leave time would enable her to perform the essential functions of the job upon her return.  *Id.* (Plaintiff "failed to demonstrated that her requested accommodation of additional time off to recuperate would have enabled her to have consistent attendance at work.").  That defendant temporarily accommodated plaintiff by not requiring her to do all the functions of her assigned position after her first surgery is not a concession by defendant that a job functions is not essential.  *Rehrs v. Iams Co.*, 486 F.3d 353, 358 (8th Cir. 2007) "An employer does not concede that a job function is non-essential simply by assuming the limited burden associated with a temporary accommodation . .. To find otherwise would unacceptably punish employers from doing more than the ADA requires, and might discourage such an undertaking on the part of employers." *Id.* (internal quotations and citations omitted).

Thus, the undisputed evidence reveals that at the time of her termination, plaintiff was not able to return to work at all.  The physician had not released her to work.  In fact, she

admitted that as of November 3, 2006, she began receiving social security disability insurance (SSDI) benefits for her back injury.  Doc. No. 26-4, p. 14.

While the pursuit and receipt of SSDI benefits "does not automatically estop the recipient from pursuing an ADA claim" the "ADA plaintiff cannot simply ignore her SSDI contention that she was too disabled to work."  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 797-798 (1999).  To defeat a motion for summary judgment on an ADA claim while receiving SSDI benefits, a plaintiff "must explain why the SSDI contention is consistent with her ADA claim that she could 'perform the essential functions' of her previous job, at least with 'reasonable accommodation.'" *Cleveland*, 526 U.S. at 798.  Here, plaintiff has not offered any evidence to explain the inconsistency between her claim of total disability in her application for SSDI benefits and her claim that she is a qualified individual within the meaning of the ADA.  Therefore, she has failed to establish a prima facie case of discrimination under the ADA and defendant is entitled to summary judgment.

Assuming plaintiff can establish a prima facie case of discrimination under the ADA, the burden would shift to defendant to provide a legitimate, nondiscriminatory reason for plaintiff's termination.  *McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769 (8th Cir. 2008).  Defendant contends that plaintiff was terminated for getting in a heated argument with Shayne King.  Plaintiff has presented no evidence to show that defendant's reason is a pretext for discrimination.  *See Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1034 (8th Cir. 2005) ("To prove pretext, the employee must do more than show that the employment action was ill-

advised or unwise, but rather must show that the employer has offered a 'phony excuse.'")

## IV.  CONCLUSION

Defendant's motion for summary judgment [Doc. No. 24] is granted and the complaint is hereby dismissed with prejudice because plaintiff has not established that defendant violated her rights under the ADA or the ACRA.[2]  Defendant's motion to deem admitted [Doc. No. 27] is granted in part and denied in part; the facts are deemed admitted but defendant's request for attorney's fees is denied.

IT IS SO ORDERED this 10th day of July, 2009.

_____
UNITED STATES DISTRICT JUDGE

_____

[2]The provisions of the ACRA "are parallel to and are coterminous with the coverage of Title II of the ADA." *Matthews v. Jefferson*, 29 F. Supp.2d 525, 540 (W. D. Ark. 1998).